IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LMMC, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>KARI SOLBERG, and ENLIFT HEALTH MEDICAL CLINIC, PLLC,<br><br>Defendants. | **8:24CV348**<br><br>**ORDER** |

This matter is before the Court on Defendants' motion to compel. Defendants seek the production of certain documents identified on a privilege log created by Plaintiff which Defendant contends are responsive to discovery served. Filing No. 59. Also pending before the Court is Plaintiff's motion for protective order which relates to the same documents. Filing No. 69. For the reasons set forth herein, the Court grants in part and denies in part Defendants' motion and grants in part and denies in part Plaintiff's motion.

## BACKGROUND

On September 5, 2024, Plaintiff filed a complaint alleging claims against Defendants for breach of contract, unjust enrichment, and tortious interference with business contract and business expectancies; the complaint also requested temporary and injunctive relief. Filing No. 1. Defendant Kari Solberg, a certified nurse practitioner, signed a confidentiality and noncompete agreement while working for Plaintiff, a provider of men's hormone replacement therapy and related services. Thereafter, Solberg left Plaintiff's employment and founded Enlift Health Medical Clinic, also a Defendant, providing similar services. All claims generally relate to the confidentiality and noncompete agreement and Solberg's work for Enlift after she left her employment with Plaintiff.

The documents[1] currently in dispute are the following email communications: (1) an August 4, 2024 email between Dan Malloy, Plaintiff's owner, to Heather Kasel, Vic Beanum and Patrick Kirk, all employees of Plaintiff ("August email"), Filing No. 72-3; and (2) a September 5, 2024 email between Molloy, Kasel, Beanum, and Kirk ("September email"). Filing No. 72-3. No attorneys are included on any of these emails.

The emails at issue were inadvertently produced by Plaintiff in 2025. In January 2026, Plaintiff's counsel asked Defendants' counsel to delete the emails in question as privileged. Filing No. 61-3. Plaintiff updated its privilege log. Filing No. 61-4. Additional requests for production were served on Plaintiff in February 2026 to which the emails in question were responsive. Plaintiff objected to the production of the emails in question as privileged pursuant to the work product doctrine. Filing No. 61-8.

## ANALYSIS

The only issue presently before the Court is whether the August email and September email are protected pursuant to the work product doctrine. The work product doctrine is set forth in Fed. R. Civ. P. 26(b)(3)(A) and states:

> A party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial needs for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

[1] The Court directed Plaintiff to file the documents sealed on the docket to allow for *in camera* review. *See* Filing No. 68. For reference, Filing No. 63 is LMMC0000017; Filing No. 64 is LMMC0000065-66; Filing No. 65 is LMMC0000069-71; Filing No. 66 is LMMC0000194-195; Filing No. 67 is LMMC0000209-210.

The party arguing protection pursuant to the work product doctrine has the burden of showing the application of this privilege. *Petco Animal Supplies Stores, Inc. v. The Fife Fifty Two Corp.*, 2015 WL 12698058 at *1 (D.Neb. Feb. 25, 2015); *see also Carlson v. Freightliner, LLC*, 226 F.R.D. 343 (D.Neb. Dec. 1, 2004) (internal citations omitted).

"The work product doctrine was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). It is intended to protect an attorney's strategies and legal impressions—it does not protect facts concerning creation of work product or facts contained within work product. *Carlson*, 226 F.R.D. at 366 (internal citation omitted); *see also Monsanto Co. and Monsanto Tech. LLC v. E.I. Du Pont De Nemours and Co.*, 2011 WL 4408184, at *2 (E.D.Mo. Sept. 22, 2011) (The work product doctrine "especially protects those document and tangible things that contain the mental impressions, investigative endeavors, conclusions, opinions, or other legal theories of a party's attorney." (internal quotations omitted)). "The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party." *Murphy,* 560 F.2d at 334.

Given the purpose of the work product doctrine, documents prepared in the ordinary course of business, rather than for purposes of litigation, are not protected by the work-product doctrine. *Simon*, 816 F.2d at 401. Whether a document is created for purposes of litigation is a factual determination. *Id.* The Eighth Circuit endorses the following test:

> whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product

> immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon,* 816 F.2d at 401.

At least one district court in this circuit has noted that "[t]o a certain extent, an attorney or his or her agents must be involved in producing the work product in order for it to be protectible work product." *Monsanto Co.,* 2011 WL 4408184 at *3. This court then noted that "if these impressions and observations originate from an attorney or a discussion with an attorney, this material then comes within the work product doctrine." *Id.*

The August email, sent from Dan Molloy, is in response to an employee and directs Kasel, Beanum, and/or Kirk to reach out to Plaintiff's attorney with the documents relevant to Defendants. The September email asks for comment regarding the draft complaint prepared by counsel. The complaint was filed the same day the September email was sent. Counsel was not present on any of these emails.

Plaintiff primarily relies on out of circuit caselaw that stands for the proposition that internal messaging among employees can be work product if such messaging was done in anticipation of litigation. The undersigned does not quarrel with the fact that there may be circumstances in which messaging amongst a party's employees may be subject to the work product doctrine, however, Plaintiff has not fulfilled its burden of showing that this is the case here for the August email.

First, Plaintiff did not fulfill its burden of showing the August email, Filing Nos. 64, 65, is protected by the work product doctrine. The Court finds these emails were prepared in the ordinary course of business and prompted by a business update by Ward (Plaintiff's employee) to Molloy (Plaintiff's Chief Executive Officer) and Kirk (Plaintiff's employee). Though the business update appears to have ultimately caused Plaintiff to engage counsel to file this lawsuit, no attorney was involved in the communication and it does not reflect privileged advice from an

attorney. *See Monsanto Co.*, 2011 WL 4408184 at *4. Moreover, there is no evidence before the court that counsel was engaged in this matter at that time, rather the opposite is true. Accordingly, counsel could not have prompted the internal communications amongst Plaintiff's employees. After all, the work product doctrine was designed to prevent "unwarranted inquiries into the files and mental impressions *of an attorney*." *Simon*, 816 F.2d at 401. (quoting *Hickman*, 329 U.S. at 510-11.); *see also J.Swanson & Co., LLC v. Rejuvenating Nutrition Coaching, LLC*, 2024 WL 4544137 at *10 (D. Minn. Apr. 25, 2024) (finding the subject email was not protected by the work product doctrine and, when doing so, stating "[t]he subject email does not contain, reference, or discuss any attorney's mental impressions, strategies, opinions, thoughts, or legal theories" and, further, indicating that "the mere reference to ongoing litigation in a document is insufficient to confer work product protection onto the document."); *see also In re Application of Republic of Ecuador*, 280 F.R.D. 506, 515 (N.D. Cal. Mar. 9, 2012) (finding certain documents, after in camera review, to not be protected by the work product doctrine when there was "no indication that these communications include[d] the 'theories or mental impressions of counsel.'"); *BFI Waste Sys. of North Am. LLC v. Freeway Trans., Inc.*, 2012 WL 13028153, at *6 (D. Minn. Feb. 1, 2012) (finding the work product doctrine did not apply to an email seeking the involvement of in-house counsel and stating "[w]hile litigation may have been on the event horizon, the *desire* for input from in-house counsel prior to making a business decision is a communication that occurs in the ordinary course of business."); *United States ex. rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F.Supp.3d 1319, 1330 (N.D. Ga. Nov. 16, 2015) (finding the work product doctrine did not apply to an email that did not involve attorneys; sought no specific legal advice; primarily concerned business purposes, namely, directing the recipient to meet with counsel and the business to engage in corrective action and discusses the possibility of a settlement and business impact of such). Plaintiff has not fulfilled its burden of showing the work product privilege applies to the August email.

In contrast, Plaintiff has fulfilled its burden of showing the September email, Filing Nos. 63, 66, is protected by the work product doctrine. The purpose of this email communication was to gain feedback on the complaint, drafted by Plaintiff's attorney, which was ultimately filed later that day. Based upon the information before the Court, this email was not prepared in the ordinary course of business but, instead, was in anticipation of litigation The impressions and observations originated from Plaintiff's attorney and the employees' communications in response were in an effort to assist counsel with legal strategy or theories. Consequently, the complaint that was filed later that day.

Accordingly,

1. Defendants' motion to compel, Filing No. 69, is granted in part and denied in part as set forth herein.
2. Plaintiff's motion for protective order, Filing No. 59, is granted in part and denied in part as set forth herein.
3. If no objection to this Order is filed within the time prescribed by NECivR 72.2, Filing No. 64 (LMMC0000065-66) and Filing No. 65 (LMMC0000069-71) will be unsealed, but remain restricted to case participants and the Court. The Clerk of the Court is directed to set a case management deadline for September 14, 2026.

Dated this 31st day of August, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge